■ Kolel Damsek Eliezer, Inc., Appellant, v Victor Schlesinger et al., Respondents, et al., Defendants. [935 NYS2d 83]—

The respondents moved, inter alia, in effect, for summary judgment on their third, fourth, and fifth affirmative defenses alleging that the plaintiff was collaterally estopped from asserting an ownership interest in the subject property and that it had actual and constructive notice of the respondents' interest in the subject property. They contended that ownership of the subject property had already been determined in a prior action entitled *Schlesinger v Schlesinger*, commenced in the Supreme Court, Kings County, under index No. 27246/00 (hereinafter the prior action) by the defendant Nathan Schlesinger against the estate of his brother, Jack Schlesinger. The respondents asserted that Nathan Schlesinger and the estate of Jack Schlesinger had agreed to resolve ownership of the subject property by resort to binding arbitration, and that the arbitrator determined that the defendant Eva Schlesinger owned an undivided one-half interest in the subject property—a determination that was ultimately confirmed (*see Schlesinger v Schlesinger*, 21 AD3d 942 [2005]). In support of their motion for summary judgment in this action, the respondents argued that the plaintiff took title to the subject property from the defendant Nathan Schlesinger by quitclaim deed (hereinafter the quitclaim deed) while the ownership of the subject property was still in dispute in the prior action. Accordingly, the respondents maintained that the plaintiff was bound by the arbitrator's determination.

The plaintiff opposed the respondents' motion for summary judgment and urged the Supreme Court to search the record and award summary judgment in its favor. The plaintiff contended that it was neither a party to the prior action nor was it in privity with any of the parties to that action or the

binding arbitration. Furthermore, it argued that it did not have constructive notice of the dispute because the subject property was not at issue in the prior action at the time it took title to the subject property, and that the parties agreed to arbitrate the issue only after title to the subject property had been transferred to it. The plaintiff also disputed the respondents' contention that it obtained an interest in the subject property by quitclaim deed, asserting that Nathan Schlesinger had no interest in the subject property at the time that he executed the quitclaim deed, and that it actually obtained its title from a different source or sources.

In an order dated March 15, 2010, the Supreme Court granted those branches of the respondents' motion, which were, in effect, for summary judgment on the third, fourth, and fifth affirmative defenses alleging that the plaintiff was collaterally estopped from asserting an ownership interest in the subject real property and had actual and constructive notice of their claims to the subject real property, and on their first counterclaim to the extent of declaring that the defendant Eva Schlesinger owned an undivided one-half interest in the subject property, and directed the recording of a deed reflecting that one-half interest. Thereafter, the plaintiff moved to stay the enforcement of the order dated March 15, 2010, pending appeal. In an order dated April 13, 2010, the Supreme Court granted the plaintiff's motion on condition that it, among other things, deposit the required deed with the Kings County Clerk pursuant to CPLR 5519 (a) (5) and post an undertaking in the amount of $108,000. The plaintiff appeals from stated portions of the orders dated March 15, 2010, and April 13, 2010.

The doctrine of collateral estoppel bars a party from "relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]; *see Tydings v Greenfield, Stein & Senior, LLP*, 11 NY3d 195, 199 [2008]). "As the consequences of a determination that a party is collaterally estopped from litigating a particular issue are great, strict requirements for application of the doctrine must be satisfied to insure that a party not be precluded from obtaining at least one full hearing on his or her claim" (*Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]).

Collateral estoppel may serve to bar "not only parties from a previous action from litigating an issue decided therein, but those in privity with them as well" (*id.* at 486). The term privity has been applied to "denote a mutually successive relationship of the same rights to the same property" (*id.*; *see Downey v*

*Seib*, 185 NY 427, 433 [1906]). As a general matter, collateral estoppel "applies only to a privity arising after the event out of which the estoppel arises and the person in privity is bound by . . . the estoppel because he comes in after the fact creating the estoppel by succession . . . to the original title or interest" (*Masten v Olcott*, 101 NY 152, 161 [1886]; *see Gramatan Home Invs. Corp. v Lopez*, 46 NY2d at 486).

Here, the Supreme Court concluded that the plaintiff was bound by the arbitrator's determination that Eva Schlesinger owned an undivided one-half interest in the subject property. The Supreme Court's conclusion was based on its determination that since ownership of the subject property was a disputed issue in the prior action at the time the plaintiff acquired the subject property, it had actual and constructive notice of the dispute and was in privity with Nathan Schlesinger. We disagree, and conclude that the respondents failed to establish that the plaintiff took title to the subject property with actual or constructive knowledge of their claims to the property and, thus, the respondents failed to establish that the plaintiff was in privity with Nathan Schlesinger with respect to the respondents' claims for purposes of the doctrine of collateral estoppel.

At common law, the doctrine of lis pendens provided that any person who purchased real property that was the subject of litigation was presumed to have constructive notice of the dispute and was bound by the judgment in the action as if he or she were a party to it (*see Matter of Sakow*, 97 NY2d 436, 440-441 [2002]; *5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d 313, 318-319 [1984]; *see also* 13-6501 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 6501.01; *see generally* Restatement [Second] of Judgments §§ 43, 44). Thus, at common law, a search of all court records was required to determine whether real property in which a purchaser sought an interest was the subject of pending litigation (*see Matter of Sakow*, 97 NY2d at 440; *5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d at 318-319; *see also* 13-6501 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 6501.01). This cumbersome process of searching through court records was seen as an intolerable burden, effectively restraining alienation of real property and, thus, "the common-law lis pendens doctrine was replaced in most states by statutes requiring the filing of a notice of pendency before a would-be purchaser or encumbrancer would be charged with notice of the prior interest" (*Matter of Sakow*, 97 NY2d at 440; *see* CPLR art 65; *see also* 13-6501 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 6501.02). Such statutes diminished the burden on purchasers of real property "by requiring that a notice of pendency be filed in a central

registry" (*5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d at 319).

The statutory procedure in New York for notifying landowners' potential successors in interest of pending actions concerning real property necessarily "limits" the common-law doctrine of lis pendens, which attached merely by service of process in an action (Advisory Comm Notes, reprinted following NY CLS, Book 4L, CPLR 6501, at 3; *see* 13-6501 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 6501.02 [2011]; *see generally* Restatement [Second] of Judgments § 44 [1]). Thus "[t]he notice of pendency provisions in [CPLR] Article 65 completely replace the constructive notice effect of the commencement of an action under the common-law *lis pendens* doctrine" (13-6501 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 6501.12; *see Matter of Sakow*, 97 NY2d at 442-443; *Israelson v Bradley*, 308 NY 511, 515-516 [1955]; *cf. Gramatan Home Invs. Corp. v Lopez*, 46 NY2d at 486).

Pursuant to CPLR article 65, "[a] notice of pendency shall state the names of the parties to the action, the object of the action and a description of the property affected" (CPLR 6511 [b]). Moreover, the notice of pendency must be filed with a copy of the complaint (*see* CPLR 6511 [a]; *5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d at 320; *Chateau Rive Corp. v Riverview Partners, LP*, 18 AD3d 492, 493 [2005]). This requirement "derives from the ancient concern that would-be purchasers obtain adequate notice of the risk to the property's title" (*5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d at 320-321).

The Court of Appeals has "referred to a litigant's ability to file a notice of pendency as an 'extraordinary' privilege because of the relative ease by which it can be obtained and its powerful effect on the alienability of real property" (*Matter of Sakow*, 97 NY2d at 441, citing *Israelson v Bradley*, 308 NY at 516). "To counterbalance the ease with which a party may hinder another's right to transfer property, [the Court of Appeals] has required strict compliance with the statutory procedural requirements [of CPLR article 65]" (*5303 Realty Corp. v O & Y Equity Corp.*, 64 NY2d at 320; *see Matter of Sakow*, 97 NY2d at 441; *Israelson v Bradley*, 308 NY at 516).

Here, the record reveals that the notices of pendency which allegedly provided the plaintiff with constructive notice of the prior action failed to comply with the applicable statutory requirements (*cf.* CPLR 6511). This failure rendered these notices of pendency "defective and void" and insufficient as a matter of law to provide the plaintiff with constructive notice (*Chateau Rive Corp. v Riverview Partners, LP*, 18 AD3d at 493;

*see Israelson v Bradley*, 308 NY at 515-516; *Woodenbury v Spier*, 122 App Div 396, 398 [1907]; *see also* Restatement [Second] of Judgments § 44 [1]).

The respondents have, therefore, failed to demonstrate, prima facie, that the plaintiff had constructive notice that the ownership of the subject property was in dispute in the prior action before it acquired the subject property. Accordingly, the Supreme Court erred when it granted that branch of the respondents' motion, which was, in effect, for summary judgment on their fifth affirmative defense alleging that the plaintiff had constructive notice of the respondents' claims to the subject real property. Further, under the circumstances of this case, we award summary judgment to the plaintiff dismissing the respondents' fifth affirmative defense pursuant to our authority to search the record and award summary judgment to the nonmoving party with respect to an issue that was the subject of the motion before the Supreme Court (*see Blair v O'Donnell*, 85 AD3d 954, 956-957 [2011]).

Furthermore, the record is devoid of any evidence establishing that the plaintiff had actual knowledge that ownership of the subject property was at issue in the prior action before it acquired that property (*cf. Da Silva v Musso*, 76 NY2d 436, 439 [1990]; *Stephens v Snitow*, 95 AD2d 806, 807 [1983]). Accordingly, the respondents also failed to demonstrate, prima facie, that the plaintiff took title to the real property with actual knowledge of the respondents' claims to the subject property, and, consequently, the Supreme Court should not have granted that branch of the respondents' motion which was, in effect, for summary judgment on their fourth affirmative defense alleging that the plaintiff had actual notice of their claims in and to the subject property.

Since the respondents failed to establish that the plaintiff took title to the subject property with actual or constructive knowledge of their claims to the property, they failed to demonstrate that the plaintiff was in privity with Nathan Schlesinger with respect to their claims (*cf. Matter of Corporate Woods 11, LP v Board of Assessment Review of the Town of Colonie*, 83 AD3d 1250 [2011]). It was therefore error to apply the doctrine of collateral estoppel so as to render the plaintiff bound by the arbitrator's determination. In addition, we note that, as the plaintiff correctly contends, in order to establish their prima facie entitlement to judgment as a matter of law with respect to the issue of collateral estoppel, the respondents had the burden of demonstrating that the plaintiff's interest in the subject property was acquired through the quitclaim deed provided to it by

Nathan Schlesinger. There is absolutely nothing in the record that shows that the quitclaim deed from Nathan Schlesinger conveyed any interest in any real property (*cf. Margolin v Gatto*, 70 AD3d 1014 [2010]). Accordingly, the Supreme Court should not have granted that branch of the respondents' motion, which was, in effect, for summary judgment on the third affirmative defense alleging that the plaintiff was collaterally estopped from asserting an ownership interest in the subject property.

In sum, the Supreme Court erred when it granted those branches of the respondents' motion which were, in effect, for summary judgment on their third, fourth, and fifth affirmative defenses alleging that the plaintiff is collaterally estopped from asserting an ownership interest in the subject property and had actual and constructive notice of their claims in and to the subject property, and on their first counterclaim to the extent of declaring that the defendant Eva Schlesinger owns an undivided one-half interest in the property, and directed the recording of a deed reflecting that one-half interest.

In light of the foregoing, on the Court's own motion, the deed deposited with the Kings County Clerk shall be null and void and the undertaking posted shall be cancelled (*see* CPLR 5519 [c]), and the appeal from the order dated April 13, 2010, must be dismissed as academic. Angiolillo, J.P., Hall, Austin and Miller, JJ., concur.